**Maryanne KELLER, Pauline York, Diana Degette, Douglas Garrett, John W. Singletary, and Lila Pedroza, Plaintiffs,**

v.

**Donetta DAVIDSON, Secretary of State, Colorado General Assembly, and Bill Owens, Governor of the State of Colorado, Defendants.**

No. CIV.A.03–Z–1482(CBS).

United States District Court, D. Colorado.

Jan. 23, 2004.

David Richard Fine, Kelly/Haglund/Garnsey & Kahn LLC, Denver, CO, for plaintiffs.

Richard C. Kaufman, Friedlob, Sanderson, Paulson & Tourtillott, LLC, Christopher R. Paulson, Saunders, Snyder, Ross & Dickson, P.C., Allan L. Hale, Richard A. Westfall, Hale Hackstaff Friesen, LLP, Denver, CO, for defendants.

Before EBEL and PORFILIO, Circuit Judges of the United States Court of Appeals for the Tenth Circuit, and WEINSHIENK, Senior District Judge of the United States District Court for the District of Colorado.

## MEMORANDUM OPINION AND ORDER

EBEL, Circuit Judge.

This dispute over competing congressional redistricting plans for the state of Colorado is before a three-judge panel convened pursuant to 28 U.S.C. § 2284. We have before us Plaintiffs' Motion to Remand, the General Assembly and Governor Bill Owens' Motion to File Amended Counterclaims, and Colorado Attorney

General Ken Salazar's Motion to Intervene on the side of the Plaintiffs. In light of the Colorado Supreme Court's recent decision in the original proceeding of *People ex rel. Salazar v. Davidson*, 79 P.3d 1221 (Colo.2003), we also face a number of questions pertaining to this court's jurisdiction and the preclusive effects of the *Salazar* decision. After hearing oral argument and reviewing the parties' briefs on these issues, we conclude, for the reasons set forth below, that we have jurisdiction over this case.

We also conclude, however, that the Colorado Supreme Court's *Salazar* decision necessarily adjudicated the issue of federal constitutional law raised by Defendants' counterclaims now before us. Unless the United States Supreme Court overturns *Salazar* on federal constitutional grounds, this case will be dismissed: the federal claims will be dismissed under principles of Res Judicata and the Plaintiffs' state law claims will be dismissed as moot. However, if the United States Supreme Court reverses or modifies the federal law ruling in *Salazar*, then we will have to determine in light of the Supreme Court's opinion how to proceed in this case. The time during which the Secretary of State and the General Assembly can seek *certiorari* from the Supreme Court to review *Salazar* has not yet passed, and *Salazar* is therefore not yet final. Accordingly we will retain jurisdiction for now and enter a ruling only on the General Assembly and Governor Owens' Motion to File Amended Counterclaims. We will defer ruling on all other pending motions until the *Salazar* opinion is final.

## I. Background

This case first arose in May of 2003, but the controversy underlying this litigation originated in 2001. As a result of the 2000 census, Congress determined that Colorado would be allotted an additional seat in the House of Representatives, increasing the number of congressional districts in Colorado from six to seven. After acquiring the census data in 2001, however, the Colorado General Assembly failed to pass a congressional redistricting plan in time for the 2002 elections. In response to litigation brought by Colorado voters, the Colorado state courts stepped in and drew a congressional district map for the 2002 elections that took account of the new census figures and conformed to federal voting rights requirements. *See Avalos v. Davidson*, No. 01CV2897, 2002 WL 1895406 (Colo.Dist.Ct. Jan.25, 2002); *aff'd sub nom. Beauprez v. Avalos*, 42 P.3d 642 (Colo.2002). After the 2002 elections gave Colorado Republicans majorities in both houses of the state legislature, the General Assembly made another attempt at passing a redistricting plan. This time they were successful, and the redistricting legislation, passed as "Senate Bill 03–352," was signed into law by Governor Bill Owens on May 9, 2003.

On that same date, Plaintiffs now before us filed suit against Colorado Secretary of State Davidson in state court, challenging the General Assembly's power and procedures in passing SB 03–352 (the "legislative plan")[1] and seeking to enjoin the

---

1. We label SB 03–352 the "legislative plan" to distinguish it from the court-approved plan created in the *Avalos* litigation, which we refer to as the "court plan." We do so because the central issue of federal law in this case revolves around the power of these two branches of state government to direct the congressional redistricting process, and we

want clearly to identify each plan with the power from which it claims legitimacy. We also want to be clear, however, that it is the *congressional* district map that is at issue here, and not any plan setting out electoral districts for members of the state legislature. The grant of redistricting authority contained in Article I, § 4 of the U.S. Constitution, in-

plan's implementation. On August 1, 2003, after Plaintiffs amended their complaint to include claims based on federal law, Defendants removed the case to the United States District Court for the District of Colorado, where it was randomly assigned to Senior District Judge Zita L. Weinshienk. On August 8th, Defendants filed Answers and Counterclaims, in which Defendants requested a declaratory judgment both that the legislative plan was a lawful exercise of the Assembly's power and that, under Article I, § 4 of the United States Constitution, neither the Colorado Constitution nor a prior redistricting plan adopted by court order would prevent the Assembly from drawing new congressional districts. On August 13, 2003, Judge Weinshienk filed a Notification to Chief Judge Deanell Reece Tacha of the Tenth Circuit Court of Appeals that the case required the appointment of a three-judge panel pursuant to 28 U.S.C. § 2284, and Chief Judge Tacha appointed this panel on August 18, 2003.

In the time between the filing of this suit in state court and its removal to federal court, Colorado Attorney General Salazar filed an original petition in the Colorado Supreme Court, seeking an order prohibiting Secretary of State Davidson from implementing the legislative redistricting plan and commanding Davidson to use the court plan in the 2004 elections. Salazar's original petition, filed on May 14, 2003, with the Colorado Supreme Court, argued that Article V, Section 44 of the Colorado Constitution prohibited the General Assembly from redistricting when it had failed to do so before the first congressional election of the decade and the courts had been forced to step in and

draw the district boundaries. The Colorado Supreme Court heard oral argument on September 8, 2003, from Salazar and Davidson, as well as from the General Assembly, which had intervened on the respondents' side to join Davidson. That court also heard arguments from Governor Owens as *amicus*.[2] Cognizant of the possibility that the Colorado Supreme Court's ruling in *Salazar v. Davidson* might resolve some or all the major issues in the lawsuit pending before this court, we took no significant action on this case after removal, other than to issue an order on September 25th asking the litigants before us to file "status report" briefs with us three days after the announcement of the Colorado Supreme Court's *Salazar* decision.

On December 1, 2003, the Colorado Supreme Court handed down its decision in *Salazar v. Davidson*, holding that Colo. Const. Art. V, § 44 limited redistricting to once per decade, to be completed in the time between the decennial census and the first election of the decade. Since the state courts had adopted a redistricting plan in 2002 after the legislature's efforts had failed, the Colorado Supreme Court concluded that the legislative plan passed in May, 2003 violated the state constitution, and it ordered Davidson to employ the court-approved plan through the 2010 election season.

Plaintiffs now argue that the Colorado Supreme Court's opinion in *Salazar* has settled the federal constitutional issues before us, and they ask that we dismiss Defendant's federal law counterclaims and that we then either dismiss the entire case without prejudice or remand it to state

voked by the Defendants, involves only the drawing of federal congressional districts.

**2.** The Governor's *amicus* argument before the Colorado Supreme Court was limited to challenging Salazar's power under the state constitution to sue Davidson, who, under normal circumstances, is the Attorney General's client.

court for determination of any remaining state law issues. Defendants argue that we should proceed to address the merits of their federal constitutional claims, and the General Assembly and the Governor ask for leave to file amended counterclaims requesting declarations that Colo. Const. Art. V, § 44, as interpreted by the Colorado Supreme Court in *Salazar,* violates Art. I, § 4 of the federal Constitution and that the legislative plan adopted in May, 2003 is the lawful plan for Colorado's congressional districts. The General Assembly and the Governor's amended counterclaims also request an injunction from this court prohibiting the enforcement of the court-created congressional districts that the *Salazar* court ordered the Secretary of State to use through 2010. Finally, the Attorney General moves to intervene on the side of the Plaintiffs, and joins Plaintiffs in arguing that we lack jurisdiction to hear this case and that the Colorado Supreme Court's *Salazar* decision precludes us from addressing Defendants' federal law counterclaims.

## II. Jurisdiction

■ This court has an independent duty to examine its own jurisdiction. *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). We therefore raised the jurisdictional question in this case on our own motion and requested argument from the parties in our December 9th Minute Order.

### A. The Rooker–Feldman Doctrine

■ Under the *Rooker–Feldman* doctrine,[3] lower federal courts lack subject matter jurisdiction to consider claims that explicitly or functionally seek appellate review of prior state court judgments. Thus,

a party to a state court proceeding may not appear in federal court to challenge the judgment of the state court on the basis of claims that were actually decided by the state court or of claims that are "inextricably intertwined" with that prior state court judgment. *Kenmen Eng'g v. City of Union,* 314 F.3d 468, 473 (10th Cir.2002) (quoting *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)). While the Courts of Appeals have at times struggled in setting clear guidelines for identifying claims that are "inextricably intertwined" with state court judgments, recent Tenth Circuit precedent instructs us to ask "whether the state-court judgment *caused,* actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress." Kenmen,* 314 F.3d at 476 (emphasis in original).

■ General challenges to a state law on which the state court relied in reaching its decision are not considered "inextricably intertwined" with the judgment if the plaintiff in federal court has standing to bring that challenge independent from any effort to overturn the specific state judgment. *See Facio v. Jones,* 929 F.2d 541, 543 (10th Cir.1991) (plaintiff's challenge to Utah's default judgment procedures barred by *Rooker–Feldman* where his standing to bring that challenge was dependent upon his ability to upset the default judgment entered against him); *see also Kenmen,* 314 F.3d at 476 (general challenge to state law was not "inextricably intertwined" where "(1) the party does not request that the federal court upset a prior state-court judgment applying that law against the party, and (2) the prior state-court judgment did not *actually decide* that the state law at issue was facially

---

**3.** *See Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Dist. of* *Columbia Ct. of App. v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

constitutional..." (emphasis in original) (citations omitted)).

## B. Whether Rooker–Feldman Binds All Defendants

■ It appears, under Tenth Circuit law, that *Rooker–Feldman* only bars federal suits brought by litigants that were parties in the prior state court action or that were in privity with such parties. *Johnson v. De Grandy*, 512 U.S. 997, 1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) (finding no *Rooker–Feldman* bar where, among other factors, plaintiff in federal case was not a party to the previous state court action); *Johnson v. Riddle*, 305 F.3d 1107, 1116 (10th Cir.2002) ("[I]t is well settled that *Rooker–Feldman* applies only when the party against whom the doctrine is invoked was a party to the state court proceeding which the federal court is being asked in substance to review."); *Johnson v. Rodrigues*, 226 F.3d 1103, 1109–10 (10th Cir.2000) (relying on *De Grandy* and collecting cases, holding *Rooker–Feldman* did not apply to federal litigants not party to the state action); *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 481 (10th Cir.2002) (applying *Rooker–Feldman* against parties that were not individually named in a prior state court suit, since they were the agents of the entity specifically named in the state court action). *But see Lemonds v. St. Louis County*, 222 F.3d 488, 494–95 (8th Cir.2000) (noting split in authority and applying *Rooker–Feldman* to federal plaintiffs that were not party to the state court action).

■ Here, *Rooker–Feldman* is invoked against Davidson, the General Assembly, and the Governor. Davidson and the General Assembly were named as Respondents in the proceedings before the Colorado Supreme Court, and the Governor's claimed interest in the primacy of the legislative lawmaking process in congression-al redistricting places him in privity with the General Assembly for purposes of our *Rooker–Feldman* analysis. Plaintiffs in this current action were not party to the state court proceedings in *Salazar*, but *Rooker–Feldman* does not require mutuality—the question is whether the parties against whom the *Rooker–Feldman* doctrine is now being applied were parties to the prior state court action. We therefore find the party requirement satisfied.

## C. Whether Rooker–Feldman Bars Defendants' Original Counterclaims

The *Rooker–Feldman* doctrine relies on principles of federalism and on the U.S. Supreme Court's jurisdiction under 28 U.S.C. § 1257 to prevent appellate review of state court decisions by the lower federal courts. It does not, however, disturb the basic structure of our judicial system that allows for concurrent jurisdiction in both state and federal courts. While preclusion law may operate through the Full Faith and Credit Statute to prevent a litigant from getting two judgments on the same issue in both state and federal court, a party is nevertheless permitted to pursue parallel cases in both systems. *Rooker–Feldman* does not strip the federal courts of jurisdiction over cases brought parallel to a state action.

■ A federal action is parallel to a state suit for *Rooker–Feldman* purposes where the federal case is filed before a decision is reached in the state court action sought to be protected from inappropriate federal review. *See Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 138 (2nd Cir.1997) (holding *Rooker–Feldman* inapplicable where a federal motion to compel arbitration was filed before the state courts ruled on the arbitration issue); *Dickie v. City of Tomah*, 999 F.2d 252, 254 (7th Cir.1993) (finding *Rooker–Feldman* inapplicable where the federal claim was

filed before the state court announced its adverse decision); *Snodderly v. Kansas*, 79 F.Supp.2d 1241, 1248–49 (D.Kan.1999) (adopting the rule in *Dickie* ). To hold otherwise would be to set up a race between state and federal courts, in which the federal court would have to reach a decision first if it is to retain its jurisdiction over the case. The obvious perverse effects of such a rule outweigh the drawbacks of the timing rule adopted in *Distajo*, which may encourage litigants to hedge their bets by filing parallel cases in federal court while awaiting the outcome of their state court action.

This timing rule, however, is flexible enough to allow courts to limit such abuse. Thus, in *American Reliable Insurance Co. v. Stillwell*, the Fourth Circuit refused to treat as "absolutely controlling" the fact that the plaintiff had filed the federal complaint before the state court's adverse ruling on the identical motion. 336 F.3d 311, 318 (4th Cir.2003). Although the *Stillwell* court found the timing of the federal filing to be relevant, it held that *Rooker–Feldman* was nevertheless applicable where the plaintiff in the federal case had "let the federal complaint sit in the Clerk's office without serving it while awaiting the state-court decision," only to serve process on the defendants two days after the state court ruled against the plaintiff. *Id.*

■ We conclude that this case, and in particular the Defendants' original counterclaims, are parallel to the Colorado Supreme Court litigation in *Salazar v. Davidson*. This case was removed to us on August 1st, and Defendants filed their original counterclaims on August 8th. Defendants' original counterclaims preceded the Colorado Supreme Court's judgment in *Salazar* by four months and preceded oral argument in *Salazar* by one month. And while this case was removed to federal court at the Defendants' initiative, their opportunity to remove was of course created by the Plaintiffs' addition of federal constitutional claims to their complaint. The history of this case does not persuade us that this federal action "is intended to be nothing more than an appeal of an unfavorable decision by the state court," *Stillwell*, 336 F.3d at 319. Therefore, we find that the *Rooker–Feldman* doctrine does not apply to the Defendants' original counterclaims and thus we have jurisdiction to hear those counterclaims.[4]

### III. Pending Motions

#### A. The General Assembly and Governor Owens' Motion to File Amended Counterclaims

■ The General Assembly and the Governor have jointly requested leave to file amended counterclaims under Fed. R.Civ.P. 13(e) and 15(d), seeking to take account of the Colorado Supreme Court's decision in *Salazar v. Davidson*. Their

---

4. Our failure to take action while the *Salazar* litigation proceeded in the Colorado Supreme Court does not convert this case into the substantial equivalent of a post-judgment appeal of *Salazar*. First, the decision to delay the proceedings was made *sua sponte* by this panel, not at the request of any of the parties. Thus the concern in *Stillwell*, that parties will attempt an end-run around *Rooker–Feldman* by carefully timing their filings in federal court without meaningfully pursuing the federal litigation until after receiving an adverse state judgment, does not apply. Second, we

did not formally stay this litigation during the pendency of the *Salazar* case. Rather, we simply employed the deference to state courts that is called for under *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and *Growe v. Emison*, 507 U.S. 25, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993). The Colorado Supreme Court had granted original jurisdiction in *Salazar* explicitly to consider the scope of the Colorado Constitution, and we waited to see if its decision would resolve or moot the issues before us.

motion was filed on December 4, 2003, three days after the Colorado Supreme Court announced its holding in *Salazar v. Davidson*, so the amended counterclaims are not parallel to the state action for purposes of *Rooker–Feldman*. The General Assembly's motion also candidly states its efforts to amend were directly spurred by the state court's ruling in *Salazar*. There can be no question, therefore, that *Rooker–Feldman* controls our jurisdiction to entertain the proposed amended counterclaims. We conclude that a combination of *Rooker–Feldman* and standing issues preclude our ability to grant any relief under the proposed Amended Counterclaims. Accordingly, we deny the Motion to File Amended Counterclaims.

The Tenth Circuit's recent exposition of the *Rooker–Feldman* doctrine in *Kenmen Engineering v. City of Union* clearly shows that we are barred from granting the General Assembly's second and third amended claims for relief. Not only do the General Assembly and the Governor lack standing to sue private parties such as the private Plaintiffs now before us for an injunction suspending enforcement of the Colorado Supreme Court's order in *Salazar*, but the request for such an injunction flatly violates *Rooker–Feldman* by seeking to upset a specific state court judgment. *See Kenmen*, 314 F.3d at 476. The declaratory judgment requested by the General Assembly, that the legislative plan "is Colorado's lawful congressional redistricting plan," similarly runs afoul of *Rooker–Feldman*'s prohibition on upsetting prior state court judgments; the *Salazar* court explicitly struck down the legislative plan that the General Assembly now asks us to approve.

The General Assembly's first claim for relief, requesting a declaratory judgment that Colo. Const. Art. V, § 44, as interpreted by the Colorado Supreme Court, violates Art. I, § 4 of the U.S. Constitution, is also ultimately barred by the combined force of *Rooker–Feldman* and standing doctrines. In order to avoid *Rooker–Feldman*'s prohibition of efforts to "upset" a prior state court judgment, this claim must be construed as requesting only prospective relief from this federal court—i.e. an entirely forward-looking declaration that Art. V, § 44 of the Colorado Constitution cannot be invoked in the future to prohibit the legislature from redistricting after the courts have drawn congressional district lines for the first election of the decade. Any relief sought from a federal court would have to take effect only after the 2010 elections because the *Salazar* opinion mandates the use of the court plan through the rest of the current decade. Nevertheless, as the branch of state government whose powers under the U.S. Constitution have allegedly been trimmed by the *Salazar* court's interpretation of the state constitution, the General Assembly can perhaps allege sufficient "injury in fact" (e.g. a denigration of its current authority) for standing purposes. But as with its request for an injunction, the General Assembly has in any event brought its general challenge to state law against the wrong parties—i.e. private parties who lack any enforcement authority over the applicable state statutory and constitutional law, with the result that the claim does not arise from an "actual controversy" as required by the Declaratory Judgment Act, 28 U.S.C. § 2201.

An actual controversy under 28 U.S.C. § 2201 only arises where the parties have immediate "adverse legal interests" on the issue in question. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). The General Assembly may be able to assert an institutional legal interest

in its future ability, after 2010, to draw new congressional districts notwithstanding the existence of a court-approved redistricting plan. The current Plaintiffs, however, have not indicated any interest in the future shape of the Assembly's congressional redistricting power after 2010; their concerns are entirely focused on the redistricting plan passed by the Assembly in May of 2003. In the absence of a bilateral and conflicting interest in the future validity of Colo. Const. Art. V, § 44, this court cannot entertain the General Assembly's declaratory judgment claim against these private party Plaintiffs. *Cf. S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch., Inc.,* 24 F.3d 427, 431–32 (2nd Cir.1994) (finding no jurisdiction to hear a declaratory action that did not implicate the rights of the plaintiff or defendant in relation to each other, but was aimed at establishing the plaintiff's rights in relation to a third party).

Since we conclude that all the relief requested by the General Assembly and the Governor in their amended counterclaims is foreclosed by the *Rooker–Feldman* doctrine and by the Assembly's failure to assert its generalized challenge to the Colorado Constitution against a proper state official, we deny the Motion to File Amended Counterclaims.

### B. *Plaintiffs' Motion to Remand*

Plaintiffs have asked us to remand this case to state court, invoking various feder-al abstention doctrines and claiming that the predominance of state law issues demonstrates that state court is the more appropriate forum.

#### 1. *Growe v. Emison abstention*

Plaintiffs' argument that the Supreme Court's decision in *Growe v. Emison,* 507 U.S. 25, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993), commands us to defer to state courts before deciding federal constitutional issues relating to redistricting is based on a misunderstanding of that case. The deference the Supreme Court required in *Growe* was to state legislative and judicial processes for actually drawing up and selecting a redistricting plan. Once a plan has been duly adopted by state mechanisms, federal courts have authority equal to that of the state courts in evaluating that plan's conformity with federal statutory and constitutional requirements, subject to the constraints of *Rooker–Feldman* and Res Judicata.[5] *See id.* at 37–42, 113 S.Ct. 1075. Thus, *Growe,* standing alone, would not automatically require us to remand this action to the state district court.

#### 2. *Issue Preclusion*

Although *Growe* does not compel us to remand to the state courts, we will not keep this case unless there are viable federal issues for us to decide. And whether federal constitutional issues remain outstanding depends on whether our consider-

---

**5.** Plaintiffs' invocation of the abstention doctrines set forth in *R.R. Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) is misguided. *Pullman* abstention is inapposite where all state law issues that might have permitted us to avoid federal constitutional questions have been resolved, as was done by the Colorado Supreme Court's decision in *Salazar.* *Burford* abstention, which is intended to avoid federal court interference with complex or specialized state regulatory regimes, cannot prevent this court from examining federal constitutional questions surrounding the General Assembly's power to pass redistricting legislation that controls the shape of Colorado's congressional districts. *Thibodaux* abstention applies in diversity cases; this, however, is a federal question case.

ation of them has been precluded by the Colorado Supreme Court's ruling in *Salazar v. Davidson*. We conclude that the *Salazar* court did in fact decide that Colo. Const. Art. V, § 44 did not violate Article I, § 4 of the U.S. Constitution. Since we are precluded from addressing the Defendants' federal constitutional claims under the doctrine of issue preclusion, we find that state issues now predominate in this case. However, as noted earlier we will retain jurisdiction of this case for now, awaiting the final disposition of *Salazar* in the United States Supreme Court. Whether we ultimately proceed with the federal issues, or whether we dismiss the entire action, or whether we remand to the state court will depend on how, and if, the United States Supreme Court reviews the *Salazar* decision.

 Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts give the same preclusive effect to state court judgments that would be afforded to such prior judgments by other courts in that state. *Ryan v. City of Shawnee*, 13 F.3d 345, 347 (10th Cir.1993).

A party asserting issue preclusion must meet four requirements under Colorado law:

(1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding;

(2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding;

(3) There was a final judgment on the merits in the prior proceeding;

(4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Michaelson v. Michaelson*, 884 P.2d 695, 700–701 (Colo.1994).

The Plaintiffs and the Attorney General argue that the federal constitutionality of Colo. Const. Art. V, § 44 was actually litigated and necessarily adjudicated in the *Salazar* proceedings before the Colorado Supreme Court, and that we are therefore precluded from deciding that issue anew. We agree.[6]

---

6. The parties also raised the possibility that the Secretary of State and the General Assembly's participation in the *Salazar* litigation might, through the doctrine of *claim* preclusion, prevent them entirely from presenting their counterclaims in this case. Under Colorado law, claim preclusion requires four elements: (1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions. *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo.1999). Unless we ultimately grant Attorney General Salazar's Motion to Intervene, there would not be mutuality between any of the parties in this case and the parties in the *Salazar* case. Claim preclusion ordinarily requires mutuality. *Id.* Even if Salazar is allowed to intervene, there would be no mutuality between the Plaintiffs in this case and the parties in the *Salazar* case.

In any event, the preclusion that Plaintiffs seek is unusual in that they seek to prevent

Davidson and the General Assembly from bringing counterclaims that are based on arguments they raised as *defenses* in the proceedings before the state court. The general rule in such circumstances, where the subsequent claim for relief was not a compulsory counterclaim in the first litigation, is that a litigant in a second action is not prevented from seeking relief on the basis of an argument that was used as an affirmative defense, but not as a counterclaim for relief, in the first action. *Eason v. Bd. of County Comm'rs of the County of Boulder*, 961 P.2d 537, 539 (Colo.Ct.App.1997); 18 *Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure*, § 4414 (2d ed.2002), 342–43. Defendants' current federal declaratory judgment claims would not appear to be compulsory counterclaims in the context of the Colorado Supreme Court's original proceeding in *Salazar v. Davidson*, especially where the state court took original jurisdiction only to decide a question of state consti-

It is beyond question that the Colorado Supreme Court's *Salazar* decision culminated in a final judgment on the merits. Nor is there any dispute that the parties against whom issue preclusion is now sought—Secretary of State Davidson, the General Assembly, and Governor Owens—were parties or were in privity with the parties to the *Salazar* litigation.

The difficulty lies in determining whether the Colorado Supreme Court "necessarily adjudicated" the federal constitutional question raised before us by the Defendants. While the court's opinion in *Salazar v. Davidson* states on several occasions that its decision striking down the redistricting plan adopted by the General Assembly is based in state law, we find ourselves logically compelled to conclude that the federal constitutional question was actually and necessarily decided by the Colorado Supreme Court.

The opening lines of its discussion of the Assembly's power to redistrict characterizes the inquiry as "whether SB 03–352 [the legislative plan] violates the Colorado Constitution." *Salazar*, 79 P.3d at 1231. And two sentences later, the court states: "We base our holding on Article V, Section 44, of the Colorado Constitution, which prohibits congressional redistricting more than once per decade." *Id.* When the *Salazar* court turns to address federal law, it begins with a disclaimer of sorts. "We base our decision on the Colorado Constitution, but to put state law in context, we begin with a discussion of federal law." *Id.* In that discussion of Article I, § 4 the court makes two points—first, that the federal Constitution's textual grant of power to prescribe the "times, places and man-

ner of holding elections" to the state legislature "broadly encompass[es] any means permitted by state law, and [does] not [ ] refer exclusively to the state legislature"; and second, that "the word 'legislature,' as used in Article I of the federal Constitution, encompasses court orders. State courts have the authority . . . . to enact their own redistricting plans when a state legislature fails to replace unconstitutional districts with valid ones." *Id.* at 1232.

Nevertheless, the Colorado Supreme Court appears ultimately to hold that the restriction they find in Colo. Const. Art. V, § 44—granting the General Assembly one, and only one, chance to create congressional districts through legislation—does not violate the federal Constitution when it concludes that "the state constitution limits redistricting to once per census, no matter which body creates the districts. Nothing in state or federal law contradicts this limitation." *Id.* at 1231–32. This statement can reasonably be taken as a holding that Colo. Const. Art. V, § 44 does not violate Article I, § 4 of the federal Constitution. And as a matter of pure logic, the *Salazar* court could not in good faith have relied upon a provision of the Colorado Constitution to invalidate the legislature's congressional redistricting plan if it believed that provision was invalid under the federal Constitution. The federal constitutionality issue was raised and argued before the Colorado Supreme Court by the Defendants. Therefore, the conclusion that the Colo. Const. Art. V, § 44 does not violate Art. I, § 4 of the federal Constitution appears to be a necessary component of the Colorado Supreme Court's decision in *Salazar*.[7]

---

tutional interpretation. We therefore do not believe Defendants' counterclaims to be claim precluded. Furthermore, the matter of claim preclusion appears to be moot, since we find issue preclusion applies.

7. We recognize that this is a close question, and there is the risk that the ambiguity in the Colorado Supreme Court's opinion could be used by its defenders to argue that no issue of federal law was decided in *Salazar* and that

■ Finally, Defendants have attempted to argue that they did not receive a full and fair opportunity to be heard on their federal claims because of the extraordinary nature of the original proceedings before the state supreme court. Under Colorado law, our examination of a party's full and fair opportunity to litigate an issue looks to:

> (1) whether the remedies and procedures of the first proceeding are substantially different from those in the proceeding in which collateral estoppel is asserted;
>
> (2) whether the party . . . against whom collateral estoppel is sought had sufficient incentive to litigate vigorously; and
>
> (3) the extent to which the issues [being litigated] are identical.

*Antelope Co. v. Mobil Rocky Mountain, Inc.*, 51 P.3d 995, 1003 (Colo.Ct.App.2001).

Defendants concede that their constitutional challenge to Colo. Const. Art. V, § 44 is a purely legal issue, so that the unavailability of discovery or other means of collecting evidence in the *Salazar* proceedings is irrelevant for our evaluation of their full and fair opportunity to litigate that constitutional question. Furthermore, we have been given no reason to believe Defendants lacked strong incentives to litigate their federal claims vigorously before the Colorado Supreme Court. And while the parties' submissions to the court in *Salazar* did not frame the constitutional question in exactly the same terms as do their briefs in this case, the arguments presented to the state court adequately raised the same issue Defendants seek to litigate before this panel; i.e., whether Art. I, § 4 of the federal Constitution prohibits the limitations on the legislature's redistricting power urged on the Colorado court by Attorney General Salazar. In light of the above, we cannot say that the Defendants were denied a full and fair opportunity to litigate their federal claims before the Colorado Supreme Court, and we therefore conclude that Defendants' federal constitutional claims are precluded by the judgment in *Salazar*.

In summary, we will defer ruling on the Motion to Remand until it is determined whether the *Salazar* opinion is final. If the *Salazar* opinion becomes final in its current version, we will then dismiss the federal claims on the basis of issue preclusion and we will dismiss the pendent state claims as moot. At that point, all of the claims will be dismissed and thus, Plaintiffs' Motion to Remand will also be dismissed as moot. If, on the other hand, the United States Supreme Court reviews the *Salazar* opinion, we will reexamine the Motion to Remand in light of whatever rulings are issued by the United States Supreme Court.

### C. Other Motions

We also have before us the Motion by Attorney General Salazar to intervene as

---

the decision is therefore not eligible for review by the United States Supreme Court. Should such a tactic be successful, the unfortunate result would be that an important issue of federal constitutional law would entirely escape review in the federal courts. Our concern about this possibility was assuaged at oral argument, where counsel for Attorney General Salazar clearly represented to us that he believed the Colorado court had decided the federal question, and indicated that his position would likely remain the same should the respondents in *Salazar* seek *certiorari* from the Supreme Court. Although our conclusion that the federal issues were decided by the Colorado Supreme Court precludes our ability to address those issues, that conclusion concurrently suggests that the federal constitutional question is appropriately presented for direct review by the U.S. Supreme Court of the *Salazar* opinion.

of right pursuant to Fed.R.Civ.P. 24(a). We will take that motion under advisement and defer ruling on it until we determine whether this case will be dismissed on the grounds noted above. Having deferred ruling on Attorney General Salazar's Motion to Intervene, we nevertheless believe he should continue to have a voice in this case. We therefore recognize his appearance thus far in the case and, until further notice, we will recognize him as Amicus.

There is also a Motion to Dismiss or for Summary Judgment filed by the Colorado General Assembly and Governor Bill Owens when this case was pending in the state district court. That motion will also be taken under advisement.

## IV. Conclusion

Based on the reasons set forth above, our rulings at this time are as follows:

First, we conclude that we have jurisdiction over this case and that the *Rooker-Feldman* doctrine does not prevent us from hearing Defendants' original counterclaims challenging the federal constitutionality of Colo. Const. Art. V, § 44, as construed by the Colorado Supreme Court in *Salazar v. Davidson;*

Second, we DENY the General Assembly and the Governor's Motion to File Amended Counterclaims, since *Rooker-Feldman* and standing doctrines prevent us from granting any relief under the proposed amended counterclaims; and

Third, we conclude that the Colorado Supreme Court in *Salazar v. Davidson* decided the federal constitutional issues raised before us, and if that case becomes final we will be precluded from addressing those matters anew under the doctrine of Issue Preclusion.

It is hereby ORDERED that this case be stayed until the *Salazar* opinion becomes final or until the United States Su-

preme Court rules in any appeal of that case. At that time, we will decide whether to proceed, dismiss, or remand this action, and we will rule on all other pending motions. The parties are further ORDERED to advise this Court when the *Salazar* litigation has become final or at such time as the U.S. Supreme Court has reviewed and ruled upon the *Salazar* opinion.