**F I L E D**

**PUBLISH**

**March 29, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MO'S EXPRESS, LLC, doing business
as Mo's Express; AMERICAN ALL
STAR SHUTTLE & LIMO, LLC,
doing business as Denver City
 Express; DAVID RUBY, doing
business as Road Runner Express;
MOHAMMAD JAVID AMINI, doing
business as Flying J Shuttle; SHAHLA
SHAN, doing business as EZ
Transportation; CENTENNIAL CAB,
LLC, doing business as A + A Airport
Shuttle; AMERICAN SHUTTLE,
INC.,

      Plaintiffs - Appellants,

      and

ALL STATES SHUTTLE, LLC;
COLORADO EXPRESS AIRPORT
SHUTTLE, LLC; T&G, INC., doing
business as Denver Pro Express;
BELAYE T. DRESE, doing business
as Front Range Express, Inc.; MILE
HIGH EXPRESS
TRANSPORTATION, doing business
as Mile High Express; HANAREH
CORPORATION, doing business as
Advance Airport Shuttle,

      Plaintiffs,
v.

GREGORY E. SOPKIN; POLLY
PAGE, in her official capacity as

No. 05-1036

Commissioner Public Utilities
Commission of the State of Colorado;
CARL MILLER, in his official
capacity as Commissioner of Public
Utilities Commission of the State of
Colorado; PUBLIC UTILITIES
COMMISSION FOR THE STATE OF
COLORADO,

Defendants - Appellees.

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 04-ES-1972 (PAC))**

Richard S. Strauss of Hochstadt, Straw, Strauss & Silverman, P.C., Denver
Colorado (M. Andrew Andrade of the Law Offices of M. Andrew Andrade, Esq.,
Grenwood Village, Colorado with him on the briefs) for Plaintiffs-Appellants.

Allison H. Eid, Solicitor General, Denver, Colorado (John W. Suthers, Attorney
General, and David A. Beckett, Assistant Attorney General, Denver, Colorado, on
the briefs) for Defendants-Appellees.

Before **KELLY**, **HENRY**, and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

Thirteen individuals and companies that provide shuttle service to and from

the Denver International Airport filed suit on September 23, 2004 against the

Colorado Public Utilities Commission (PUC) and its three commissioners in their

official capacities.  The Plaintiffs sought to enjoin the PUC from taking enforcement action against them for failure to obtain a certificate of public convenience and necessity issued by the state.  They presented two legal theories: first, that certificates granted to each Plaintiff by the Federal Motor Carrier Safety Administration authorized their provision of transportation services, preempting contrary state law requirements, and that the PUC lacked jurisdiction to determine whether they were in compliance with their federal certificates; and second, that the PUC had threatened enforcement action against the Plaintiffs "because each of them are [sic] minorities or foreign born nationals," in violation of the Equal Protection Clause of the Fourteenth Amendment.  App. 7–10.

In December 2004, the district court dismissed the Complaint for lack of jurisdiction based on the *Rooker-Feldman* doctrine.  *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  In March 2005, while this appeal was pending, the Supreme Court decided *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S. Ct. 1517 (2005), which substantially narrowed the scope of *Rooker-Feldman*. Then in February 2006, following oral argument in this appeal, the Court decided *Lance v. Dennis*, 126 S. Ct. 1198 (2006), which clarified the role of "privity" between parties in evaluating the district court's jurisdiction under *Rooker-Feldman*.  Based on those decisions as well as our *Rooker-Feldman* case law, we

**REVERSE** the judgment of the district court and **REMAND** the case for further proceedings.

## I. Facts and Procedural History

Colorado law provides that any carrier operating a motor vehicle for purposes of transporting persons on public highways in *intra*state commerce must first obtain a certificate of public convenience and necessity (CPCN) from the PUC. *See* C.R.S. § 40-10-104(1). Although they do not possess a state-issued CPCN, some shuttle operators—including each of the Plaintiffs in this case—provide transportation services to and from the Denver International Airport based on federal certificates, issued by the Federal Motor Carrier Safety Administration. These certificates authorize transportation services along certain *inter*state routes. *Cf. Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 209–10 (1824) (holding that a federal license to transport passengers in interstate commerce preempts state law prohibiting such transportation without a state license). Each federal certificate contains a "CONDITION" that the carrier is "authorized to provide intrastate passenger transportation service under this certificate *only* if the carrier also provides substantial regularly scheduled interstate passenger transportation service on the same route." App. 14 (emphasis in original).

Beginning in 1999, the PUC issued a series of penalty notices to some of these federally certificated carriers, alleging that they were conducting extensive intrastate business without providing the regularly scheduled interstate services,

as required by their federal certificates. While review of those penalty notices was still pending in state court, a group of four carriers consisting of Trans Shuttle, Inc., Hallelujah Shuttle, Ethio Shuttle, and Galaxy Shuttle—none of which is a party to this action—filed suit in federal court against the PUC and other defendants, seeking declaratory and injunctive relief. The district court declined to exercise jurisdiction on *Younger* abstention grounds, citing the pending proceedings in state court. *See Younger v. Harris*, 401 U.S. 37 (1971); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). In an unpublished order in November 2001, this Court affirmed the abstention decision. *See Trans Shuttle, Inc. v. Pub. Utils. Comm'n*, 24 F. App'x 856 (10th Cir. 2001).

The state court proceedings culminated in a May 2004 decision of the Colorado Supreme Court, which upheld the PUC's jurisdiction over carriers transporting passengers in intrastate commerce. *See Trans Shuttle, Inc. v. Pub. Utils. Comm'n*, 89 P.3d 398, 404–06 (Colo. 2004) ("*Trans Shuttle*"). The court also affirmed the PUC's imposition of fines against the three carriers that were parties to the state-court appeal: Trans Shuttle, Inc., Mo's Express, LLC, and Hallelujah Shuttle. *See id.* at 409. In reaching its decision, the Colorado Supreme Court considered and specifically rejected the federal preemption and jurisdiction arguments raised by the Plaintiffs in this action. *See id.* at 404–06.

On August 16, 2004, the PUC sent a letter to each of the thirteen Plaintiffs in this action. The letters described the Colorado Supreme Court's holding in *Trans Shuttle*, and stated that "the PUC intends to go to court to ask for an injunction to halt the operations of any motor carrier transporting passengers to and from Denver International Airport (DIA) on an intrastate basis . . . without actual, substantial and bona fide interstate operations in full compliance with the carrier's federal certificate." App. 47. The letters also announced that the PUC "intends to go to court to ask for an injunction against [the named Plaintiff] unless [the named Plaintiff] provides proof to the PUC of its 2004 for-hire interstate passenger transportation operations . . . . [within] 30 days from the date of this letter." *Id.*

In September 2004, the Plaintiffs commenced this federal action seeking declaratory and injunctive relief to prevent the PUC from going to court as threatened in its letters. They did not seek money damages. They argued, first, that the PUC lacked jurisdiction to impose penalties because federal law authorized them to provide transportation services. According to the Plaintiffs, only a federal authority—not a state agency—has jurisdiction to revoke their certificates for failure to satisfy the conditions. Second, they argued that the PUC's actions reflected discrimination against businesses with minority and foreign-born owners and operators.

One of the Plaintiffs in this action, Mo's Express, was also a losing party to the state court judgment in *Trans Shuttle*. With one possible exception, the other twelve Plaintiffs--All States Shuttle, Colorado Express Airport Shuttle, Denver Pro Express, Front Range Express, Mile High Express, Denver City Express, Road Runner Express, Flying J Shuttle, EZ Transportation, Advance Airport Shuttle, A+ Airport Shuttle, and American Shuttle--had no involvement in the *Trans Shuttle* litigation.[1]

The district court dismissed the case on jurisdictional grounds, citing the *Rooker-Feldman* doctrine. The Plaintiffs had made it "clear," according to the district court, that "their intentions in filing in this court is [sic] to void the ruling of the Colorado Supreme Court" in *Trans Shuttle*, and thus to take a *de facto* appeal in federal district court from a judgment by a state court. Order of Dismissal 12. Although it acknowledged that Mo's Express is the only Plaintiff in this case that was also party to *Trans Shuttle*, the district court found that the Plaintiffs' claims had been "fully presented" in the state court proceedings "by the shuttle operators who were named in the state action." *Id.* at 14. The court concluded that "the identity of interest of all the operators has remained the same

---

[1]At oral argument, the Defendants stated that Colorado Express Airport Shuttle had litigation in the Colorado courts that was stayed pending the outcome of *Trans Shuttle* and has since become final. For the reasons set forth in Part II.B, we need not determine whether Colorado Express Airport Shuttle was in fact bound by the judgment in *Trans Shuttle* or by another final judgment of the Colorado courts.

throughout." *Id.* at 16.  It also found that the Plaintiffs "have always been in privity with one another in their joint commitment to the same claims and arguments." *Id.*  It therefore applied the jurisdictional bar of *Rooker-Feldman* against all Plaintiffs, even those who were not parties to the state court action.

We review the district court's dismissal for lack of subject matter jurisdiction *de novo*, and any factual findings relevant to the court's jurisdiction for clear error.  *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004).

## II. *Rooker-Feldman*

The *Rooker-Feldman* doctrine does not reflect a constitutional limitation on the lower federal courts.  *See* The Federalist No. 82, at 494 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("I perceive at present no impediment to the establishment of an appeal from the State courts to the subordinate national tribunals; and many advantages attending the power of doing it may be imagined.").  Instead, it arises by negative inference from 28 U.S.C. § 1257(a), which allows parties to state court judgments to seek direct review in the Supreme Court of the United States, but not to appeal to the lower federal courts. *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004). *Rooker-Feldman* precludes federal district courts from effectively exercising appellate jurisdiction over claims "actually decided by a state court" and claims "'inextricably intertwined' with a prior state-court judgment."  *Kenmen Eng'g v.*

*City of Union*, 314 F.3d 468, 473 (10th Cir. 2002) (citing *Rooker*, 263 U.S. at 415–16, and *Feldman*, 460 U.S. at 483 n.16).

The operation of *Rooker-Feldman* is best demonstrated by the two cases that give the doctrine its name. In *Rooker*, the federal-court plaintiffs alleged that the judgment of an Indiana circuit court, to which they were parties, had caused them injury by enforcing a state statute in violation of the Contracts Clause and due process protections of the United States Constitution. *Rooker*, 263 U.S. at 414–15. In federal court they sought relief "in equity to have [the] judgment . . . declared null and void." *Id.* at 414. The Supreme Court held that because "[t]he jurisdiction possessed by the District Courts is strictly original," not appellate, the district court lacked jurisdiction over the claim, which was "indubitably . . . merely an attempt to get rid of the judgment for alleged errors of law." *Id.* at 416. In *Feldman*, the federal-court plaintiffs alleged (1) that the District of Columbia Court of Appeals had caused them injury by denying their petitions for bar membership "arbitrarily and capriciously . . . unreasonably and discriminatorily," and (2) that one of the court's general rules, Rule 46 I(b)(3) concerning proof of legal education to establish eligibility for the D.C. bar, violated due process and the federal antitrust laws. *Feldman*, 460 U.S. at 468, 486–87. They sought injunctive relief to compel the District of Columbia Court of Appeals to grant them bar admission or to allow them to sit for the bar immediately, as well as declaratory relief announcing that the court's policies

were unconstitutional. *Id.* at 468–69. The Supreme Court held that the federal district court lacked jurisdiction to review the plaintiffs' applications, but that it could properly exercise jurisdiction over their "general attack on the constitutionality of Rule 46 I(b)(3)." *Id.* at 486–87.

Both *Rooker* and *Feldman* were "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil*, 125 S. Ct. at 1521–22. As the Supreme Court observed in *Exxon Mobil*, however, lower courts have at times construed the *Rooker-Feldman* doctrine "to extend far beyond the contours of the *Rooker* and *Feldman* cases." *Id.* at 1521. In particular, some circuit courts—including this one—have occasionally treated *Rooker-Feldman* as a substitute for ordinary principles of preclusion, or as an extension of the various grounds for abstention by federal courts. *Id.* at 1522. In *Exxon Mobil*, the Supreme Court sought to curb these excesses and "confined" *Rooker-Feldman* "to cases of the kind from which the doctrine acquired its name." *Id.* at 1521. In *Lance*, the Court again emphasized "the narrowness of the *Rooker-Feldman* rule." 126 S. Ct. at 1201.

In two respects, assertion of the *Rooker-Feldman* doctrine in this case epitomizes the expansive view that the Supreme Court repudiated in *Exxon Mobil*. First, the district court applied *Rooker-Feldman* against all of the Plaintiffs, despite the fact that most of them were not party to the state-court judgment in

*Trans Shuttle*.  Second, the district court found *Rooker-Feldman* applicable despite the fact that the Plaintiffs sought only prospective relief challenging the constitutionality of the PUC's jurisdiction to take future action.  Under our pre-*Exxon Mobil* case law, both holdings were questionable; after *Exxon Mobil* and *Lance*, they are incorrect.

## A.  Applying *Rooker-Feldman* Against Nonparties

This Court has repeatedly held that the *Rooker-Feldman* doctrine "should not be applied against non-parties" to the state-court judgment.  *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1109 (10th Cir. 2000) (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005 (1994)); *Johnson v. Riddle*, 305 F.3d 1107, 1116 (10th Cir. 2002) (calling this rule "well settled").  *Rooker-Feldman*, after all, bars federal district courts from exercising appellate jurisdiction over state-court judgments, and "a person would generally have no basis (or right) to appeal a judgment to which that person was not a party."  *Kenmen Eng'g*, 314 F.3d at 480.  The Supreme Court appeared to endorse this view in *Exxon Mobil*, characterizing its decision in *De Grandy* as holding that "the doctrine has no application to a federal suit brought by a nonparty to the state suit."  *Exxon Mobil*, 125 S. Ct. at 1523.

In *Lance*, the Court explicitly held that *Rooker-Feldman* does not apply against nonparties to the prior judgment in state court.  *Lance*, 126 S. Ct. at 1202.  The case involved a federal suit brought by citizens concerning legislative

redistricting in Colorado. *Id.* at 1199. A three-judge district held that it lacked jurisdiction because of a prior state-court action in which the Colorado General Assembly pressed similar claims and lost. *See Lance v. Davidson*, 379 F. Supp. 2d 1117, 1125 (D. Colo. 2005), *rev'd sub nom. Lance*, 126 S. Ct. at 1202–03. Specifically, the panel concluded that *Rooker-Feldman* applies not only against parties to the state-court judgment, but against anyone "in privity with parties to the original state-court suit." *Id.* at 1123.[2] Noting that "when a state government litigates a matter of public concern, that state's citizens will be deemed to be in privity with the government for preclusion purposes," the panel held that although

---

[2]In support of this proposition, the panel relied on our decision in *Kenmen Engineering*. *See Lance v. Davidson*, 379 F. Supp. 2d at 1123 (citing *Kenmen Eng'g*, 314 F.3d at 481). In fact, *Kenmen Engineering* did not hold that *Rooker-Feldman* extends to all parties in privity with a state-court loser. Rather, it clarified that the "parties" to a state-court judgment for *Rooker-Feldman* purposes include all persons *directly bound by the state-court judgment*, whether or not they appear in the case caption. *See Kenmen Eng'g*, 314 F.3d at 481 (applying *Rooker-Feldman* where the federal court plaintiffs were the agents of a corporation, and the state court had issued an injunction against the corporation "by and through its officers, agents, servants, employees, attorneys, or representatives"). *Kenmen Engineering* did not retreat from the general proposition that nonparties, so defined, are not affected by the jurisdictional bar of *Rooker-Feldman*.

Thus, although the Supreme Court in *Lance* reversed a panel decision that nominally "followed Tenth Circuit precedent," *see Lance*, 126 S. Ct. at 1202 (citing *Kenmen Eng'g*, 314 F.3d at 481), the Court reversed only the district court's misapplication of *Kenmen Engineering*. It did not necessarily repudiate the narrow holding of *Kenmen Engineering* concerning parties directly bound by the state-court judgment—who would seem to fall squarely within the definition of "state-court losers." *See Exxon Mobil*, 125 S. Ct. at 1521.

the citizen plaintiffs were not parties to the prior judgment in state court, *Rooker-Feldman* operated to deprive the district court of jurisdiction. *Id.* at 1125.

The Supreme Court reversed, emphasizing that in *De Grandy* it had declined to apply *Rooker-Feldman* when the federal-court plaintiff "'was not a party in the state court,' and 'was in no position to ask this Court to review the state court's judgment.'" *Lance*, 126 S. Ct. at 1202 (quoting *De Grandy*, 512 U.S. at 1006). By asking whether the citizens were "in privity" with the General Assembly, "[t]he District Court erroneously conflated preclusion law with *Rooker-Feldman*." *Id.* Although *Lance* leaves room for an extremely limited form of privity analysis—for example, in cases "where an estate takes a *de facto* appeal in a district court of an earlier state decision involving the decedent," *id.* at 1202 n.2—it broadly rejects the use of preclusion principles in determining the scope of *Rooker-Feldman*. *Id.* at 1202–03 (noting that "*Rooker-Feldman* is not simply preclusion by another name" and that "[i]ncorporation of preclusion principles into *Rooker-Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act").

The district court in this case relied extensively on *Keller v. Davidson*, 299 F. Supp. 2d 1171 (D. Colo. 2004), another decision by a three-judge district court as part of continuing litigation over redistricting in Colorado. Based on the same prior state-court judgment at issue in *Lance*, the *Keller* panel applied *Rooker-*

- 13 -

*Feldman* against the Governor of Colorado because "the Governor's claimed interest in the primacy of the legislative lawmaking process in congressional redistricting places him in privity with the General Assembly." *Id.* at 1177. The Court's decision in *Lance* undermines not only the reasoning of *Keller* but its general technique of commingling *res judicata* and *Rooker-Feldman* principles.

*Exxon Mobil* and *Lance* make the disposition of this appeal straightforward for almost all of the Plaintiffs. Only one of the Plaintiffs, Mo's Express, was a party to the decision of the Colorado Supreme Court in *Trans Shuttle*. With a possible exception noted in footnote 1, the other Plaintiffs had no connection whatsoever to the *Trans Shuttle* case. They were not parties, they were not bound by the judgment, and they were neither predecessors nor successors in interest to the parties. The other Plaintiffs were nothing more than competitors of the shuttle operators who were party to *Trans Shuttle*. That relationship falls far short of the connection necessary under *Rooker-Feldman* to characterize their action in federal court as an appeal of the state-court judgment.

The district court found that "the identity of interest of all of the operators has remained the same throughout" because "they have always been in privity with one another in their joint commitment to the same claims and arguments." Order of Dismissal 16. The factual basis for this conclusion is uncertain, as there is no evidence to suggest that the other Plaintiffs actually consulted with the *Trans Shuttle* parties before the state court litigation began to coordinate their

claims and arguments. As far as the record discloses, the other Plaintiffs became involved only after receiving letters threatening an injunction against the operation of their businesses. In any case, a "commitment" to the same claims and arguments has no bearing on the applicability of *Rooker-Feldman*. *See Exxon Mobil*, 125 S. Ct. at 1524 n.2 (rejecting the argument that *Rooker-Feldman* applies to "federal actions that simply raise claims previously litigated in state court"); *cf. Kenmen Eng'g*, 314 F.3d at 478–79 (declining to incorporate a "full-and-fair-opportunity-to-litigate inquiry into the *Rooker-Feldman* analysis" because it "tends to blur the distinction between res judicata and *Rooker-Feldman*").

In crafting its expansive "in privity" standard, the district court sought to prevent the shuttle operators from employing an "artifice" whereby "groups of individuals like these plaintiffs could easily avoid the application of the *Rooker-Feldman* bar by merely naming only a part of the group in the state proceedings, presenting the names of new individuals in the federal case." Order of Dismissal 16. We doubt that anything so conspiratorial took place in this case, considering that the state-court proceedings involved operators who already had been fined by the PUC, whereas this suit involves operators who were only recently threatened with legal action. But even if the district court's account is accurate, any "group[] of individuals" faced with the same legal problem is free to pursue different avenues of relief. As the Supreme Court emphasized in *Exxon Mobil*,

125 S. Ct. at 1521, federal and state courts hold concurrent jurisdiction over federal claims. To the extent that strategic behavior by similarly situated parties is a concern, the proper safeguard against relitigation is *res judicata*, not *Rooker-Feldman*.

Because only Mo's Express was a party to the Colorado Supreme Court judgment in *Trans Shuttle*, the district court erred in applying *Rooker-Feldman* against the remaining Plaintiffs.

## B. Evaluating the Relief Requested in Federal Court

Even against the parties to a state-court judgment, *Rooker-Feldman* only applies when the injury alleged by the plaintiffs was "caused by [the] state-court judgment[]." *Id.* at 1521–22. As we explained in our pre-*Exxon Mobil* case law, "we approach the question by asking whether the state-court judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*," paying "close attention to the *relief* sought" in the federal suit. *Kenmen Eng'g*, 314 F.3d at 476 (emphasis in original, footnote omitted). In *Kenmen Engineering*, for example, an Oklahoma court had issued an injunction that forced a firm and its agents to sell magnesium "at a discounted rate, resulting in economic loss." *Id.* at 472. The firm's agents filed suit in federal court, alleging that the injunction itself violated their rights under federal law, and requesting money damages as compensation for the forced sale. *Id.* at 477. Emphasizing that the plaintiffs had not requested "any form of prospective declaratory

injunctive relief," this Court held that *Rooker-Feldman* deprived the district court of jurisdiction: the requested relief "would necessarily undo the Oklahoma state court's judgment" because it would "place them back in the position they occupied prior to the [injunction]." *Id.*

In contrast, when the relief sought by the plaintiffs would not reverse or "undo" the state-court judgment, *Rooker-Feldman* does not apply. *Feldman* itself distinguished "general constitutional challenges to state laws," which by definition "are not attacks on state court judgments." *Crutchfield*, 389 F.3d at 1149; *see Rodriguez (Orozco)*, 226 F.3d at 1108 (finding *Rooker-Feldman* inapplicable to a "discrete general challenge to the validity of the Utah adoption laws" that did not "challeng[e] the merits of a particular state court ruling"); *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1186 n.8 (10th Cir. 1998) (finding *Rooker-Feldman* inapplicable where the federal complaint "does not contest the finality of the Kansas Supreme Court's decision"). As the Supreme Court emphasized in *Exxon Mobil*, the *Rooker-Feldman* doctrine does not apply "simply because a party attempts to litigate in federal court a matter previously litigated in state court." 125 S. Ct. at 1527. To the contrary, a party may lose in state court and then raise precisely the same legal issues in federal court, so long as the *relief sought* in the federal action would not reverse or undo the *relief granted* by the state court: "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he

was a party . . . , then there is jurisdiction . . . .'" *Id.* (quoting *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Mo's Express, like the other Plaintiffs, has requested only prospective injunctive and declaratory relief that would prevent the PUC from exercising jurisdiction over them in the future. *See* App. 10. Both of its claims amount to "general constitutional challenges" to the jurisdiction of the PUC: first, that federal law preempts the state's jurisdiction pursuant to the Supremacy Clause; and second, that the PUC has exercised its jurisdiction in a discriminatory fashion in violation of the Equal Protection Clause of the Fourteenth Amendment. Neither claim would disrupt the judgment of the Colorado Supreme Court. The *Trans Shuttle* decision simply "upheld penalties assessed against [the parties, including Mo's Express,] by the Public Utilities Commission." *Trans Shuttle*, 89 P.3d at 400 (characterizing the decision below, which the Colorado Supreme Court affirmed). The Plaintiffs in this action have not requested money damages that would compensate them for the amount of those penalties. Nor have they requested retrospective relief that would invalidate any past action of the PUC. Accordingly, their federal suit would not reverse or otherwise "undo" the relief granted by the Colorado Supreme Court, and *Rooker-Feldman* does not operate to deprive the district court of jurisdiction.

To be sure, Mo's Express has asked the federal courts to accept a legal argument that was specifically rejected in its earlier lawsuit in state court. If the

- 18 -

Plaintiffs eventually prevail on the merits, the Colorado courts will have held that the PUC can exercise jurisdiction, while the federal courts will have held that it cannot. That result should not be alarming, however, because state and federal courts enjoy concurrent jurisdiction over questions of federal law, and the possibility of inconsistent rulings on issues of federal law is a predictable, if infrequent, consequence of our dual system. A federal court is free to "den[y] a legal conclusion that a state court has reached," provided it does not exercise *de facto* appellate jurisdiction by entertaining a suit that would disrupt the final judgment entered by the state court. *GASH Assocs.*, 995 F.2d at 728. Because the prospective relief requested by the Plaintiffs would not undo the penalties imposed by the state court judgment, the district court erred in applying the *Rooker-Feldman* doctrine, even against Mo's Express.

### III. Conclusion

Although we disagree with the district court's *Rooker-Feldman* analysis, we express no view as to the alternative grounds for dismissal raised by the Defendants. The *Trans Shuttle* case may well have some preclusive effect in federal court, for example, and the Plaintiffs as always must establish a justiciable case or controversy, ripe for federal review. Because the district court based its dismissal exclusively on *Rooker-Feldman*, and these other arguments were not briefed by both sides, we think it best to allow the district court to consider them in the first instance. *See Lance*, 126 S. Ct. at 1203 (Ginsburg, J., concurring)

- 19 -

(finding questions of preclusion under Colorado law "best left for full airing and decision on remand").  We also express no view on the merits of the underlying preemption and discrimination claims.

We **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.