HOLLAND INDUSTRIES,
INC., Appellant,

v.

DIVISION OF TRANSPORTATION OF
the STATE of MISSOURI, Respondent,

and

Premier Service Corporation d/b/a
Airport Limousine Service,
Intervenor–Respondent.

No. 70707.

Supreme Court of Missouri,
En Banc.

Jan. 17, 1989.

Stephen G. Newman, Jefferson City, for appellant.

David E. Woodside, Missouri Division of Transp., Jefferson City, for respondent.

E. Richard Southern, Jefferson City, for intervenor-respondent.

HIGGINS, Judge.

Holland Industries, Inc. appeals from a judgment affirming the decision of respondent, Division of Transportation of Missouri, that Holland was operating an intrastate transportation service beyond the scope of authority granted by the Interstate Commerce Commission. Holland argues first, that the division was without jurisdiction to interpret an Interstate Commerce Commission order; second, that the legislation creating the Division of Transportation violates art. III, section 22, of the Missouri Constitution; and finally, that the controversy is moot. Because the ICC has not been accorded the first opportunity to interpret its grant of authority to Holland, the judgment is reversed.

Holland Industries holds a Division of Transportation permit to operate a limousine service within Missouri to the extent authorized by the Interstate Commerce Commission. Holland has an ICC certificate that authorizes it to operate its limousine service along specific routes between Lambert International Airport in St. Louis County, Missouri, and two Illinois cities. Federal law allows a carrier with such a permit to transport passengers wholly intrastate along the specified routes. Between September 8, 1986, and November 30, 1986, Holland made about 180 one-way trips per day between the airport and various points around the St. Louis area. At most, three of these trips went into Illinois; many trips diverged from the routes prescribed by the ICC certificate. Four out of a total of over 35,000 passengers crossed the Missouri–Illinois boundary.

The Division of Transportation, acting on a complaint from the intervenor-respondent, Premier Service Corporation, investigated Holland's service, held a hearing, and determined that Holland was operating in Missouri beyond the scope of its ICC authorization. Because Holland's Missouri permit authorized only that service permitted by the ICC, MDOT issued a cease and desist order. The order apparently does not prohibit Holland from carrying passengers along the routes designated by the ICC certification, either as interstate or wholly intrastate passengers. The Cole County Circuit Court affirmed the cease and desist order now on review. Holland, in the meantime, has filed a petition for a declaratory order with the ICC. Case No. MC–C–30036. An agency determination is pending.

With respect to the issue of mootness, a case on appeal becomes moot only when circumstances change and alter the position of the parties so that the controversy ceases, and a decision can grant no relief. *State ex rel. Monsanto Company v. Public Service Commission,* 716 S.W.2d 791, 793 (Mo. banc 1986). Holland asserts that it has changed its service substantially since the time of MDOT's investigation, hearing and order. Holland, however, has represented to this Court that it regards MDOT's cease and desist order void. This alone presents a justiciable issue to the Court; Holland has not conceded that it will comply with the order if this suit is dismissed. The Court will therefore determine the merits of the case.

Holland argues that the legislation creating the Division of Transportation of Missouri is void because it violates article III, section 28, of the Missouri Constitution. Article III, section 28, provides as follows:

> No act shall be revived or re-enacted unless it shall be set forth as if it were an original act. No act shall be amended by providing that words be stricken out or inserted, but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those to be inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended.

Chapter 622, RSMo 1986, created MDOT and transferred some of the duties formerly under the jurisdiction of the Public Service Commission to MDOT. Section 622.015 provides that proceedings before MDOT shall follow the format laid out in

Chapter 386 for proceedings before the Public Service Commission, and for that purpose states: "Wherever the word 'commission' is used, the word 'division' shall be substituted therefor. Wherever the word 'commissioner' is used, the words 'administrative law judge' shall be substituted therefor."

Holland asserts that the quoted statutory language amends other statutes in violation of article III, section 28. In support of its argument, it cites *State ex rel. McNary v. Stussie*, 518 S.W.2d 630 (Mo. banc 1974), that held unconstitutional a statute which attempted to change all references to the words "twenty-one years of age" to "eighteen years of age" throughout the Missouri statutes. In *Stussie*, the statute at issue directed the Revisor of Statutes to make a blanket substitution; the exact shortcut prohibited by article III, section 28. Holland argues that section 622.015 is equally unconstitutional. In this case, however, the General Assembly did not intend to direct the Revisor of Statutes to strike and replace statutory language; the Public Service Commission continues in operation. For its purposes, the original statutory language remains unchanged. The language in question is but a direction as to which officers of the newly created MDOT are to assume responsibilities pursuant to a lawful transfer of power from an existing agency to a newly created agency. *See* Reorganization Act of 1974, app. B, RSMo (1986).

Finally, Holland argues that MDOT was without authority to interpret Holland's ICC certificate. It asserts that MDOT should have filed a complaint with the ICC in the first instance. The Bus Act (49 U.S.C., section 10922) gives the ICC authority to issue certificates permitting motor carriers to conduct interstate service. The ICC may also permit a carrier to operate entirely within one state along an interstate route. 49 U.S.C. § 10922(c)(2)(B).

■ If a carrier provides service entirely within one state, its intrastate service must have some connection to interstate operations it actually conducts. *Funbus Systems v. California Public Utilities Commission*, 801 F.2d 1120, 1130 (9th Cir.1986). MDOT argues that the requisite "nexus" does not exist, and it is therefore free to exercise jurisdiction over Holland's wholly intrastate service. MDOT received evidence on whether Holland's service to Illinois was a "sham" designed to circumvent state regulation. The administrative law judge took into account many of the factors prescribed by the federal statute for making such a determination. *See*, 49 U.S.C. § 10922(c)(2)(J) (effective April 2, 1987). Were this Court reviewing simply for competent and substantial evidence to support MDOT's decision, there is little question that the decision would be affirmed. The Court must, however, address the issue of "primary jurisdiction."

■ Under the doctrine of "primary jurisdiction," an administrative agency is given the first opportunity to rule on issues which have been placed within the special competence of that agency. *United States v. Western Pacific Railroad*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The doctrine is particularly appropriate where, as here, Congress has vested an agency with responsibility for a uniform national transportation policy. *Western Pacific*, 352 U.S. at 65, 77 S.Ct. at 165. The ICC has been given primary jurisdiction to determine whether operations conducted by an ICC-certified carrier are within the scope of its certificate. *Funbus*, 801 F.2d at 1129.

■ MDOT argues that since its order affects only intrastate service, its jurisdiction is at least concurrent with that of the ICC. In support of its position, it cites *Eichholz v. Public Service Commission*, 306 U.S. 268, 59 S.Ct. 532, 83 L.Ed. 641 (1939), where the United States Supreme Court affirmed a revocation order issued by MDOT's predecessor, the Missouri Public Service Commission. In *Eichholz*, the Public Service Commission revoked the carrier's Missouri interstate license after finding that the carrier's trips into Kansas City, Kansas, were a sham designed to avoid state regulation. The United States Supreme Court affirmed the Commission's action on review. Twenty years later, how-

ever, the Court clarified the *Eichholz* holding in *Service Storage & Transfer Co. v. Commonwealth of Virginia*, 359 U.S. 171, 79 S.Ct. 714, 3 L.Ed.2d 717 (1959), noting that in *Eichholz*, the carrier's lack of an ICC certificate, not the Commission's finding that the carrier's interstate operations were a subterfuge, was dispositive of Missouri's jurisdiction to act. *Service Storage*, 359 U.S. at 178–79, 79 S.Ct. at 718–19. The Court went on to hold: "[T]he enactment of the Motor Carrier Act did not, without more, supersede all reasonable state regulation, the latter continuing in effect until the Interstate Commerce Commission acted on the same subject matter. That it has admittedly done here." *Service Storage*, 359 U.S. at 179, 79 S.Ct. at 719. Here, the ICC has issued a certificate, evidencing an assumption of jurisdiction over Holland's activities, both interstate and intrastate. MDOT's findings, supported as they may be, are irrelevant because it has no jurisdiction to act.

The ICC must be given the first opportunity to decide whether there is a connection between Holland's interstate service and its intrastate service, and whether its operations are consistent with national transportation policy. The proper venue for redress of MDOT's grievance is in a hearing before "the authority issuing the certificate ... upon whom Congress has placed the responsibility of action." *Service Storage*, 359 U.S. at 177, 79 S.Ct. at 718. The circuit court erred in its judgment affirming the issuance of the cease and desist order.

The judgment is reversed and the cease and desist order is vacated to permit further proceedings consistent with this opinion.

BILLINGS, C.J., WELLIVER, ROBERTSON and RENDLEN, JJ., and PREWITT, Special Justice, concur.

BLACKMAR, J., concurs in separate opinion filed.

COVINGTON, J., not participating because not a member of the Court when the cause was submitted.

BLACKMAR, Judge, concurring.

I agree that the Interstate Commerce Commission should have the first opportunity to construe its own certificate. Otherwise there might be an unseemly conflict between state and federal authority. A proceeding is now pending before that body, seeking a declaratory order defining the limits of the appellant's authority. It is clear that any decision of the Interstate Commerce Commission contrary to the position taken by the court below would prevail, unless and until it is set aside in the course of federal proceedings. So a discussion on our part is unnecessary. We do not have to decide whether our holding is based on want of jurisdiction in the state courts or on principles of comity. The result would be the same. Nor do we have to speculate about the authority of our courts, in the absence of ICC proceedings. *See,* *Manion v. Kansas City Terminal Railway*, 353 U.S. 927, 77 S.Ct. 706, 1 L.Ed.2d 722 (1957).