Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE

June 19, 2017

**2017 CO 75**

**No. 16SA53, Carestream Health, Inc. v. Colo. Pub. Utils. Comm'n—Public Utilities—Tariffs—Standing—Injury-in-Fact.**

The supreme court considers two issues in this appeal from the district court's review of a Colorado Public Utilities Commission ("the Commission") decision. Both issues pertain to a billing error that led Public Service Company of Colorado ("Public Service") to undercharge Carestream Health, Inc. ("Carestream") for gas it received over the course of a three-year period.

The first issue is whether the Commission properly interpreted Public Service's tariff, specifically the requirement to "exercise all reasonable means" to prevent billing errors. The supreme court concludes that determining what means are "reasonable," as that term is used in the tariff, necessarily requires considering what errors are foreseeable. The supreme court therefore holds that the Commission properly interpreted the tariff and acted pursuant to its authority.

The second issue is whether Carestream had standing to challenge Public Service's use of its tariff to recover a portion of the undercharge from its general

customer base.  Because Carestream suffered no injury from that action, it lacks standing to challenge it.

The supreme court accordingly affirms the judgment of the district court.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 75

**Supreme Court Case No. 16SA53**
*Appeal from the District Court*
District Court, City and County of Denver, Case No. 15CV32332
Honorable Elizabeth A. Starrs, Judge

**Plaintiff-Appellant:**

Carestream Health, Inc.,

v.

**Defendant-Appellee:**

Colorado Public Utilities Commission,

and

**Intervenor-Appellee:**

Public Service Company of Colorado.

## Judgment Affirmed
*en banc*
June 19, 2017

**Attorneys for Plaintiff-Appellant:**
Lewis Brisbois Bisgaard & Smith LLP
Mark T. Valentine
  *Denver, Colorado*

**Attorneys for Defendant-Appellee:**
Cynthia H. Coffman, Attorney General
Jessica L. Lowrey, Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Intervenor-Appellee:**
Gordon & Rees LLP
Franz Hardy
Lance J. Ream
  *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.

¶1 In 2010, Carestream Health, Inc. began purchasing gas transportation services from Public Service Company of Colorado. In 2013, Public Service discovered that it had undercharged Carestream by approximately $1.26 million for those services. When Public Service sought to recover a portion of that amount, Carestream refused to pay.

¶2 Carestream filed a complaint with the Colorado Public Utilities Commission, claiming that Public Service had violated its tariff—a publicly filed document that sets forth the rates a public utility will charge and the rules and regulations it must follow— by failing to use "all reasonable means" to prevent billing errors, as required by the tariff. The Commission disagreed, and the district court affirmed the Commission's decision.

¶3 Carestream seeks reversal of the district court's judgment. Carestream argues that the Commission, in effect, improperly added language to the tariff, thereby exceeding the Commission's constitutionally and statutorily granted authority. Specifically, Carestream contends that the Commission added a requirement that billing errors be foreseeable before Public Service is required to take means to prevent them. Carestream also argues that the district court erred when it held that Carestream lacked standing to pursue a separate claim that Public Service violated its tariff by recovering from its general customer base that portion of the undercharge it was unable to recover from Carestream.

¶4 We reject Carestream's arguments on both counts. First, we conclude that determining what means are "reasonable," as that term is used in Public Service's tariff, necessarily requires considering what errors are foreseeable. We therefore hold that the

3

Commission properly interpreted the tariff and acted pursuant to its authority. Second, we conclude that Carestream lacks standing to challenge Public Service's recovery of the undercharge from its general customer base because Carestream suffered no injury from that action. Accordingly, we affirm the judgment of the district court.

## I. Facts and Procedural History

¶5 Carestream Health, Inc. ("Carestream") is a manufacturer of medical imaging media and equipment. The events giving rise to this case began in 2010, when Carestream started purchasing gas transportation services from Public Service Company of Colorado ("Public Service").

¶6 Carestream became a Public Service customer when it purchased utility assets from the Eastman Kodak Company ("Kodak"), an existing Public Service customer. However, Carestream wanted a different type of service from the one Kodak had been receiving. Kodak was a gas sales customer, which means it paid Public Service for both natural gas and for pipeline services to transport the purchased gas to its facility. Carestream wanted to be a gas transportation customer, purchasing natural gas from a different supplier and paying Public Service for transportation only.

¶7 This is where things went awry. Although Carestream was a new customer, Public Service used information from Kodak's meter to set up Carestream's account. When it did so, Public Service miscalculated Carestream's gas consumption, underreporting it by approximately fifteen percent.[1] Public Service did not discover the

---

[1] To determine its customers' gas usage, Public Service collects data from its meters and uploads that data to various automated programs. These programs apply a

error until March 2013, by which point it had undercharged Carestream by approximately $1.26 million for the gas Carestream had consumed in the nearly three years it had been a Public Service customer. Public Service does not dispute that it was responsible for the error, and Carestream acknowledges it received the gas for which it was undercharged.

¶8     After discovering the error, Public Service sought to collect a portion of the cost from Carestream. Public Service's tariff provides that in the event an error in billing occurs, the utility has the right to collect from the customer the amount of any undercharge. This right to collection is limited to the twenty-four month period immediately preceding the discovery of the billing error. Public Service therefore back-billed Carestream $716,919.71 for the period from March 2011 to March 2013. Public Service recovered the remaining $510,000 of the undercharge from its customer base through the Gas Cost Adjustment ("GCA") permitted by its tariff. The GCA allows a utility to adjust customers' rates on an expedited basis to pass changes in gas costs through to customers. Dep't of Regulatory Agencies Regs. 4600, 4601(m), 4 Colo. Code Regs. 723-4 (2017); Pub. Serv. Co. of Colo. v. Pub. Utils. Comm'n, 644 P.2d 933, 935 (Colo. 1982).

---

"pressure-based correction factor," which is a number with a value of less than one that, when applied to a customer's reported gas usage, lowers the reported gas usage in order to account for the temperature and compressability of the gas. The pressure-based correction factor is applied to the accounts of both gas sales and gas transportation customers. When Public Service set up Carestream's account, it left Kodak's pressure-based correction factor in place, but it also added a new pressure-based correction factor for Carestream. This resulted in a double application of the pressure-based correction factor to Carestream's account, lowering Carestream's reported gas usage below what it should have been.

¶9    Carestream refused to pay the $716,919.71, and it filed a formal complaint against Public Service with the Colorado Public Utilities Commission ("the Commission"). Carestream noted that although Public Service's tariff allows it to recover for billing errors, the tariff requires the utility to "exercise all reasonable means to assure accurate computation of all bills for gas service." Carestream argued that Public Service did not exercise all reasonable means to prevent the error that occurred in this case, and therefore that Public Service had failed to comply with its tariff and could not back-bill for the undercharge.

¶10    After a hearing, an administrative law judge ("ALJ") issued a decision recommending that Carestream's complaint be denied because Carestream failed to prove a direct violation of a tariff provision. The ALJ found that the situation giving rise to the billing error in this case was unique.[2] The record supports that finding.

¶11    Carestream filed exceptions to the recommended decision, but the Commission denied them. The Commission agreed with the ALJ, reasoning that "Carestream did not provide sufficient evidence from which it can be concluded that Public Service should have foreseen the problem and thereby taken reasonable means to prevent it." The Commission continued: "For this reason, we conclude that Carestream did not carry its burden of proving that Public Service did not comply with the tariff by 'exercis[ing] all reasonable means to assure accurate computation of all bills for gas service.'"

_____

[2] It was not typical for a new customer to take over the account of an existing gas sales customer and then transition to being a gas transportation customer, as Carestream did here.

6

¶12   Carestream obtained district court review of the Commission's decision pursuant to section 40-6-115(1), C.R.S. (2016).   The district court affirmed the Commission's decision after finding that its interpretation was consistent with the language of the tariff and was not unjust or unreasonable.   Before the district court, Carestream also argued that Public Service had violated its tariff by charging its customers, through the GCA, for services they did not use.   The district court rejected this claim and explained that even if there had been a violation, Carestream lacked standing to argue it before the court because Carestream had not been injured by Public Service's use of the GCA.

¶13   Carestream appealed the district court's order to this court pursuant to section 40-6-115(5), C.R.S. (2016).[3]

## II.  Standard of Review

¶14   Judicial review of a Commission decision is limited by statute to determining whether the Commission has "regularly pursued its authority" — that is, whether the Commission has acted pursuant to its constitutionally and statutorily granted authority, whether the Commission's decision violates any of a petitioner's constitutional rights,

---

[3] Carestream presents the following two issues for this court's review:

1. Whether the District Court correctly ruled that the Commission properly interpreted Public Service's tariff by determining that the tariff language "exercise all reasonable means to assure accurate computation of all bills for gas service" is limited to foreseeable errors, when that language is not in the tariff.
2. Whether the District Court correctly determined that Carestream did not have standing to argue on behalf of the general body of retail customers, and that therefore the Commission's decision on the $510,000 paid by retail customers should be upheld.

and whether the decision is just and reasonable and its conclusions are in accordance with the evidence. § 40-6-115(3), C.R.S. (2016); <u>Trans Shuttle, Inc. v. Pub. Utils. Comm'n</u>, 89 P.3d 398, 407 (Colo. 2004); <u>see</u> <u>Jarco, Inc. v. Pub. Utils. Comm'n</u>, 2 P.3d 116, 118 (Colo. 2000) ("[The supreme court] appl[ies] the same standard as the district court in reviewing Commission decisions.").

¶15 In reviewing the Commission's decision, this court determines questions of law de novo. <u>Eddie's Leaf Spring Shop & Towing LLC v. Colo. Pub. Utils. Comm'n</u>, 218 P.3d 326, 330 (Colo. 2009). Nevertheless, because the Commission is the agency that administers public utilities statutes and regulations, we should defer to its interpretation of those authorities. <u>Id.</u>

¶16 Unless the decision is challenged on constitutional grounds, the Commission's findings of fact are final and not subject to review. § 40-6-115(2), C.R.S. (2016); <u>see</u> <u>Durango Transp., Inc. v. Colo. Pub. Utils. Comm'n</u>, 122 P.3d 244, 247 (Colo. 2005).

## III. Analysis

¶17 We address two issues. First, we consider whether the Commission properly interpreted Public Service's tariff, specifically the requirement to "exercise all reasonable means" to prevent billing errors. We conclude that determining what means are "reasonable," as that term is used in the tariff, necessarily requires considering what errors are foreseeable. Second, we consider whether Carestream has standing to challenge Public Service's use of the GCA to recoup the remainder of the undercharge from its general customer base. Because Carestream suffered no injury, we conclude that it lacks standing to pursue its claim.

8

## A. Determining What Means Are "Reasonable" Requires Considering What Errors Are Foreseeable

¶18 In its order adopting the ALJ's recommended decision, the Commission focused on whether Public Service could have foreseen the billing error at issue. The Commission explained:

> We agree with [the] ALJ . . . that Carestream did not provide sufficient evidence from which it can be concluded that Public Service should have foreseen the problem and thereby taken reasonable means to prevent it. For this reason, we conclude that Carestream did not carry its burden of proving that Public Service did not comply with the tariff by "exercis[ing] all reasonable means to assure accurate computation of all bills for gas service."

¶19 Carestream claims the Commission's interpretation adds language to the tariff, by requiring errors to be foreseeable in order for Public Service to be required to take action to prevent those errors. Carestream also asserts that the Commission's novel approach deprived it of due process: Because Carestream had no reason to anticipate the issue of foreseeability, it did not present evidence regarding whether Public Service should have foreseen the billing error that occurred here.

¶20 Public Service, as a public utility, is subject to regulation by the Commission. See § 40-1-103(1)(a)(I), C.R.S. (2016); Pub. Serv. Co. of Colo. v. Van Wyk, 27 P.3d 377, 383 (Colo. 2001). The Commission requires public utilities to file and make publicly available schedules, referred to as tariffs, which show "all rates, tolls, rentals, charges, and classifications collected or enforced, or to be collected and enforced, together with all rules, regulations, contracts, privileges, and facilities that in any manner affect or relate to rates, tolls, rentals, classifications, or service." § 40-3-103, C.R.S. (2016).

¶21 The relevant portion of the tariff at issue here essentially establishes the standard of care for billing:

> The Company will exercise <u>all reasonable means</u> to assure accurate computation of all bills for gas service. Customer agrees to accept the Company's accounting for gas measurement and billing. In the event errors in billing occur, Company shall refund to customer the amount of any overcharge having resulted therefrom and, likewise, shall have the right to collect from customer the amount of any undercharge as set forth hereunder.

(Emphasis added.)

¶22 Carestream's argument requires us to consider the definition and scope of "all reasonable means." <u>Black's Law Dictionary</u> defines "reasonable" as "[f]air, proper, or moderate under the circumstances." <u>Reasonable</u>, <u>Black's Law Dictionary</u> (10th ed. 2014). Thus, the use of the term "reasonable" shows that rather than requiring compliance with some bright-line rule, the tariff calls for appropriate measures to be taken <u>given the circumstances</u>. See <u>Ritzert v. Bd. of Educ.</u>, 2015 CO 66, ¶ 44, 361 P.3d 966, 975–76 (stating that "[i]n other contexts, we have recognized that an inquiry into what is reasonable necessarily requires an examination of the underlying circumstances" and citing cases in support of that point).

¶23 Therefore, we consider the circumstances here. Public Service, a large public utility serving millions of customers, had to use "all reasonable means" to accurately compute bills for gas service. In this context, what is reasonable—that is to say, what is fair, proper, and moderate—must necessarily be judged by what is foreseeable. Public Service cannot be expected to prevent errors it cannot foresee. This interpretation is consistent with Public Service's tariff construed as a whole, which contemplates that

10

there will be situations in which a customer is undercharged and Public Service must back-bill in order to recover its costs. That is, the tariff recognizes that Public Service cannot prevent all errors. A foreseeability requirement confines the inquiry to those errors Public Service could have taken reasonable steps to avoid.

¶24 Carestream's due process argument likewise fails. Due process requires "adequate advance notice and an opportunity to be heard prior to state action resulting in deprivation of a significant property interest." Mountain States Tel. & Tel. Co. v. Dep't of Labor & Emp't, 520 P.2d 586, 588 (Colo. 1974). Carestream initiated this case by filing a complaint with the Commission and has since had ample opportunity to prove that Public Service failed to exercise all reasonable means to prevent billing errors as required by its tariff. Because determining what means are "reasonable" as that term is used in the tariff requires taking the foreseeability of errors into account, Carestream was not deprived of notice or an opportunity to be heard on foreseeability. Just because Carestream disagrees with the Commission's interpretation of "reasonable" does not mean Carestream was deprived of the opportunity to advocate its position before the Commission or at any other point in these proceedings.

¶25 Moreover, even if we accept Carestream's argument that it did not know foreseeability would be taken into account in the Commission's decision, Carestream cannot now claim it was deprived of due process when Carestream failed to seek rehearing, reargument, or reconsideration of the decision as allowed by section 40-6-114(1), C.R.S. (2016). If Carestream wished to present additional evidence concerning the foreseeability of the error that occurred in this case, it could have

11

requested that the Commission revisit its case. Carestream did not do so, and it cannot now claim that it lacked notice and an opportunity to be heard.

¶26    We turn now to the standing issue.

### B.  Carestream Lacks Standing to Challenge Public Service's Use of the GCA to Recoup its Costs from its Customer Base

¶27    Carestream argues that Public Service also violated its tariff by using the tariff's GCA provisions to recover from its general customer base the $510,000 it could not recover from Carestream. We need not address the merits of this claim, because we conclude that Carestream lacks standing to make it.

¶28    Section 40-6-115(1) authorizes any party to a proceeding before the Commission to seek review of a final Commission decision in that proceeding. But in order to establish standing, that party still must demonstrate that it satisfies the general requirements articulated in Wimberly v. Ettenberg, 570 P.2d 535 (Colo. 1977). See Maurer v. Young Life, 779 P.2d 1317, 1323 (Colo. 1989). The Wimberly standing inquiry requires a court to determine (1) whether the plaintiff was injured in fact, and (2) whether the injury was to a legally protected right. Wimberly, 570 P.2d at 539.

¶29    To argue that it satisfies the injury-in-fact requirement, Carestream relies on O'Bryant v. Public Utilities Commission, 778 P.2d 648 (Colo. 1989). In that case, the petitioner, O'Bryant, filed a complaint with the Commission when his telephone company disconnected his telephone service. Id. at 649. The Commission issued a decision finding that the company had violated a Commission rule. See id. at 650–51. The company reconnected O'Bryant's service. Id. at 650. The company sought district

12

court review of the Commission decision but then reached a settlement agreement with the Commission that modified the decision.  Id. at 651–52.  The district court dismissed the case over the objection of O'Bryant, who was not a party to and objected to the settlement agreement.  Id. at 652.

¶30    O'Bryant appealed the dismissal to this court, and the company and the Commission argued that he lacked standing to pursue his claim.  Id.  We noted that O'Bryant asserted both economic and noneconomic injuries to satisfy the injury-in-fact requirement.  Id. at 653.  We explained:

> The asserted noneconomic injury is the impairment of O'Bryant's interest, as a member of the public and as a public utility customer, to require the public utility to conform its actions to applicable [Commission] rules and to ensure that the [Commission] enforces its rules against public utilities in a manner consistent with the [C]ommission's statutory responsibilities.

Id.  The economic injury was O'Bryant's loss of opportunity to seek damages from the company for violating a Commission rule and to recover attorney fees for successfully litigating his complaint before the Commission.  Id.  We stated that these asserted injuries "cannot be characterized as so indeterminate, indirect, or trivial as unlikely to be redressed by a favorable judicial decision," and we "therefore accept[ed] O'Bryant's assertion of injury-in-fact."  Id.

¶31    Carestream claims that its interests are equivalent to O'Bryant's.  It argues that it benefits when utilities properly adhere to their tariffs and to public utility law, and that it may seek attorney fees if its argument on behalf of the public succeeds.  But unlike O'Bryant's asserted injuries, Carestream's are indirect and speculative.  While O'Bryant had already prevailed in a Commission proceeding and sought to prevent the resulting

Commission decision from being modified by a settlement to which he was not a party, Carestream seeks to challenge an action undertaken by Public Service that had no impact—pecuniary or otherwise—on Carestream. O'Bryant still had skin in the game, so to speak, but Carestream does not. Carestream therefore fails to show an injury-in-fact. See id. ("What is required for an injury-in-fact, therefore, is that the alleged injury be sufficiently direct and palpable to allow a court to say with fair assurance that there is an actual controversy proper for judicial resolution.").

¶32 Carestream is unable to show any injury from the Commission's use of the GCA to recover costs from its retail customers, and so Carestream is unable to meet the first prong of the Wimberly test. We therefore conclude that Carestream lacks standing to pursue this claim.

## IV. Conclusion

¶33 We conclude that determining what means are "reasonable," as that term is used in Public Service's tariff, necessarily requires considering what errors are foreseeable. We therefore hold that the Commission properly interpreted the tariff and acted pursuant to its authority. We also conclude that Carestream lacks standing to challenge Public Service's recovery of the undercharge from its general customer base because Carestream suffered no injury from that action. Accordingly, we affirm the judgment of the district court.

14